**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 14-3** |
| **EBONY WILLIAMS WHITE** | **SECTION: "G"** |

**ORDER AND REASONS**

Before the Court are two motions filed by Defendant Ebony Williams White ("White"): (1) a Motion to Quash Writ of Garnishment[1] and (2) a Motion for Annulment of Judgment.[2] The government opposes both motions.[3] Having considered the motions, the memoranda in support and in opposition, the record and the applicable law, for the reasons that follow, the Court denies both motions.

**I. Background**

On January 9, 2014, White was charged by an Indictment,[4] and on February 20, 2014, White was charged by a Superseding Indictment with seven counts of wire fraud and one count of obstruction of justice.[5] On July 3, 2014, White entered a plea of guilty as to Count One of the Superseding Indictment.[6] On September 25, 2014, White was sentenced to serve a term of one

---

[1] Rec. Doc. 83.

[2] Rec. Doc. 84.

[3] Rec. Doc. 92.

[4] Rec. Doc. 1.

[5] Rec. Doc. 14.

[6] Rec. Doc. 30.

year and one day in prison to be followed by a term of two years supervised release.[7] White's term of supervised release commenced on October 16, 2015, upon her release from the custody of the Bureau of Prisons.[8]

As part of the plea agreement, White agreed that the restitution provisions set forth in the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. §§ 3663, 3663(a)(3), and 3663A, would apply.[9] White agreed to pay restitution in the amount of $227,455.[10] At sentencing, the Court ordered White to pay restitution to Jefferson Community Health Care Centers, Inc. in the amount of $207,135 and to Church Mutual Insurance Company in the amount of $20,132, for a total of $227,267 in restitution.[11] The Court further ordered that the payment of restitution would begin while White was incarcerated with monthly payments in the amount of $350 following her release.[12] On October 22, 2014, the government filed a lien in Fort Bend County, Texas against White's property pursuant to 18 U.S.C. § 3613.[13] As of April 6, 2026, White had paid a total of $47,787.24 in restitution and had an outstanding balance of $179,579.76.[14]

On December 29, 2025, the Government sent White a notice of default letter.[15] The letter recommended that White immediately begin paying $350 per month as ordered by the Court to

---

[7] Rec. Doc. 49.

[8] Rec. Doc. 70.

[9] Rec. Doc. 32.

[10] Id.

[11] Rec. Doc. 49.

[12] Id.

[13] Rec. Doc. 92-3.

[14] Rec. Doc. 92-1.

[15] Rec. Doc. 92-2.

satisfy the judgment.[16] The letter informed White that the government "may take further legal action to enforce payment of this debt" through "seizure of [White's] nonexempt property by the United States Marshal, the garnishment of [White's] wages or offset of any government funds."[17]

In February and March 2026, the government filed two Applications for Writs of Garnishment with White's husband's employer and retirement plan at Citgo Petroleum ("Citgo") as garnishee.[18] Pursuant to the authority set forth in the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3205, *et seq.*, the Court granted both applications and directed the Clerk of Court to issue writs of garnishment to Citgo and Citgo's retirement plan.[19] Citgo filed a Garnishee Answer on February 27, 2026, stating that White's spouse, Jarett White, receives a semi-monthly net pay of $7,048.30.[20] On April 6, 2026 Citgo's Plan Administrator for its Employees' Retirement and Savings Plan filed a Garnishee Answer that Jarret White has a balance of $537,978.44 in his 401(k) account and a Pension Plan cash balance of $51,333.44.[21]

On March 21, 2026, White filed a Motion to Quash the Writ of Garnishment.[22] The same day, White also filed a Motion for Annulment of Judgment.[23] On April 15, 2026, the government filed an opposition to the motion.[24] On April 21, 2026, White filed a reply brief in further support

---

[16] *Id.*

[17] *Id.*

[18] Rec. Docs. 74, 80.

[19] Rec. Docs. 76, 81.

[20] Rec. Doc. 79.

[21] Rec. Doc. 90.

[22] Rec. Doc. 83.

[23] Rec. Doc. 84.

[24] Rec. Doc. 92.

of the motion.[25]

## II. Parties' Arguments

### A.   *White's Arguments in Support of the Motions*

White argues that under Rule 69(a) of the Federal Rules of Civil Procedure, the execution of a judgment must comply with Louisiana law.[26] White asserts that under Louisiana Civil Code Article 3501, money judgments prescribe by the lapse of 10 years from the time the judgment becomes final.[27] White contends that the 2014 money judgment was never revived and thus the judgment prescribed because it has been more than 10 years since it became final.[28] Therefore, White argues that the writ of garnishment should be quashed.[29]

For these same reasons, White also asserts that the restitution judgment should be annulled because it was not revived under state law.[30]

### B.   *The Government's Arguments in Opposition to the Motions*

The government submits that White's motions should be denied because the MVRA dictates the enforcement of a federal criminal restitution judgment and White's judgment has not expired.[31] The government asserts that Jarret White's income and retirement benefits are not

---

[25] Rec. Doc. 93.

[26] Rec. Docs. 83 at 1.

[27] *Id.* at 2.

[28] *Id.*

[29] *Id.* at 3.

[30] Rec. Doc. 84 at 1.

[31] Rec. Doc. 92 at 2.

exempt from garnishment under the MVRA.[32] Because both Louisiana and Texas are community property states, the government contends that the restitution judgment is a community debt.[33] Therefore, the government argues that White's spouse's income and retirement benefits with Citgo are not exempt from garnishment because the government's lien attaches to White's interest in her husband's income and retirement benefits.[34]

Finally, the government asserts that White's argument regarding prescription of the judgment is flawed because the state statutes relied upon by White are inapplicable to the enforcement of a federal criminal restitution judgment under the MVRA.[35] The government relies on 18 U.S.C. § 3613(b), stating that the liability to pay restitution terminates either 20 years from the entry of judgment or 20 years after the release from imprisonment of the person ordered to pay restitution, whichever is later.[36] Therefore, the government contends that White's liability to pay restitution to the victims of this case has not expired.[37]

## C.    *White's Arguments in Further Support of the Motions*

In reply, White contends that the government's argument is flawed because the Applications for Writs of Garnishment were based on the FDCPA, 28 U.S.C. § 3205(b)(1).[38] White argues that the citation to Section 3205(b)(1) triggers a 10-year period to revive a judgment based

---

[32] *Id.* at 4.

[33] *Id.* at 5–6.

[34] *Id.* at 6.

[35] *Id.*

[36] *Id.* at 6–7.

[37] *Id.* at 7.

[38] Rec. Doc. 93 at 2.

on Louisiana law.[39] White points out that the Applications for Writs of Garnishment made no reference to 18 U.S.C. § 3613(b) or the MVRA.[40] Because the applications and orders cited the FDCPA, White argues that the 10 year prescriptive period was triggered.[41] Under Federal Rules of Civil Procedure 59(e), White asserts that the government had 28 days from entry of the March 10, 2026 order to address any errors or changes, including citing the MVRA as the legal basis for the Writ for Garnishment.[42] Since the government only referenced the FDCPA, White argues this supports setting aside the judgment and quashing the writs of garnishment.[43]

### III. Law and Analysis

The MVRA gives the government authority to enforce victim restitution orders in the same manner that it recovers fines and by all other available means.[44] Under 18 U.S.C. § 3613(a), the government is authorized to collect criminal fines and restitution "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." The federal law that provides the practices and procedures for the enforcement of a civil judgment is the FDCPA.[45] Therefore, the Fifth Circuit has recognized that the plain language of the MVRA authorizes the government to utilize the procedures found in the FDCPA to garnish accounts for victim restitution to be paid to private individuals.[46] "The FDCPA provides the most effective

---

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.* at 3, 7–8.

[43] *Id.* at 8.

[44] *United States v. Phillips*, 303 F.3d 548, 550–51 (5th Cir. 2002) (citing 18 U.S.C. § 3664(m)(1)(A)(i)–(ii)).

[45] *Id.* at 551 (citing 28 U.S.C. §§ 3001–3308).

[46] *Id.* ("Congress drafted the MVRA with the intent that it would allow prosecutors to utilize the FDCPA to

means for the Government to enforce private victim restitution orders because it provides a uniform system for prosecutors to follow rather than resorting to the non-uniform procedures provided by the states."[47]

In this case, the Applications for Writs of Garnishment were filed under the FDCPA, which provides that "[a] court may issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest, and which is in the possession, custody or control of a person other than the debtor, in order to satisfy the judgment against the debtor."[48] The FDCPA defines "earnings" as "compensation paid or payable for personal services whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program."[49] Additionally, "nonexempt disposable earnings" means 25 percent of disposable earnings (net pay).[50] The FDCPA further provides that "[c]o-owned property shall be subject to garnishment to the same extent as co-owned property is subject to garnishment under the law of the State in which such property is located."[51]

According to the presentence investigation report, White and her husband were married in Louisiana in 2010, and they moved to Texas in 2011.[52] White has not presented any information

---

collect restitution in favor of private victims.").

[47] *Id.*

[48] 28 U.S.C. § 3205(a).

[49] 28 U.S.C. § 3002(6).

[50] 28 U.S.C. § 3002(5), (9).

[51] 28 U.S.C. § 3205(a).

[52] *See* Rec. Doc. 46 at 11.

to suggest that she and her husband are no longer domiciled in Texas. Texas is a community property state. The Fifth Circuit has consistently affirmed the garnishment of community property, including a non-debtor spouse's solely managed community property, to satisfy a defendant's restitution judgment when the spouses reside in community property states.[53]

On October 22, 2014, the government filed a lien in Fort Bend County, Texas against White's property pursuant to 18 U.S.C. § 3613.[54] Under the FDCPA, property is defined as "any present or future interest, whether legal or equitable, in real, personal (including choses in action), or mixed property, tangible or intangible, vested or contingent, wherever located and however held including community property and property held in trust (including spendthrift and pension trusts)."[55] Based on these statutes and the caselaw from the Fifth Circuit it is clear that White has an undivided interest in her spouse's income and retirement benefits, and the government's lien attaches to her rights to his property.

White is seeking to annul the Court's judgment claiming it was not revived in ten years as mandated by state law. Pursuant to 18 U.S.C. § 3613(b), "[t]he liability to pay restitution shall terminate on the date that is the later of 20 years from the entry of judgment or 20 years after the release from imprisonment of the person ordered to pay restitution." Section 3613(c) provides that restitution "is a lien in favor of the United States on all property and rights to property of the person

---

[53] *See United States v. Berry*, 951 F.3d 632, 638 (5th Cir. 2020) (affirming garnishment of a non-debtor spouse's IRA based on the debtor wife's undivided one-half interest in her husband's property under Texas community property law); *United States v. Tilford*, 810 F.3d 370, 372 (5th Cir. 2016) (affirming the garnishment of a non-debtor spouse's earnings and holding the "innocent spouse" relief is not available when the government is enforcing a criminal judgment); *United States v. Elashi*, 789 F.3d 547, 549 (5th Cir. 2015) (affirmed garnishment of non-debtor spouse's earnings to satisfy criminal special assessment of defendant).

[54] Rec. Doc. 92-3.

[55] 28 U.S.C. § 3002(12).

fined as if it were a liability for a tax assessed under the Internal Revenue Code of 1986. The lien arises upon entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated. . . ."

White was sentenced on September 25, 2014 to serve one year and one day in the Bureau of Prisons, and upon release from imprisonment White served two years of supervised release.[56] White's term of supervised release commenced on October 16, 2015, upon her release from the custody of the Bureau of Prisons.[57] Thus, White's liability to pay restitution to the victims in this case does not expire until September 25, 2035.

White suggests that the liability expired on September 25, 2024 because the judgment had to be revived within 10 years under Louisiana law. White relies on Federal Rule of Civil Procedure 69(a)[58] and Fifth Circuit authority holding that state law governs execution of a civil judgment.[59] This authority is not on point, as it concerns enforcement of a civil money judgment, which the Fifth Circuit held was not a debt owed to the government under the FDCPA.[60] Therefore, White has not demonstrated that Louisiana law on prescription and revival of money judgments is applicable to this case, which involves the enforcement of a federal criminal restitution judgment

---

[56] Rec. Doc. 49.

[57] Rec. Doc. 70.

[58] *See* Fed. R. Civ. P. 69(a) ("A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.").

[59] *Sobranes Recovery Pool I, LLC v. Todd & Hughes Const. Corp.*, 509 F.3d 216, 227 (5th Cir. 2007).

[60] *Id.* ("As we hold there is no FDCPA debt, we need not address the ability of private-party assignees of the government to invoke the FDCPA or what statute of limitations the government enjoys under it."). White also cites *TDK Elecs. Corp. v. Draiman*, 321 F.3d 677, 680 (7th Cir. 2003). That case did not concern a debt owed to the government.

under the MVRA. The government's Applications for Writs of Garnishment were clearly timely under federal law because they were filed within 20 years from the entry of the judgment. There was no need to revive the federal criminal restitution judgment in this case because the debt has not expired.

In the reply brief, White also suggests that the Applications for Writs of Garnishment were flawed because they cited the FDCPA and not the MVRA. This argument is unpersuasive. At sentencing, the Court ordered White to pay restitution to the victims of the offense under the MVRA.[61] In the plea agreement, White also agreed to pay restitution to the victims of this offense under the MVRA.[62]  The Applications for Writs of Garnishment and the Orders granting those applications cited the FDCPA, which is the enforcement provision for collection of the debt.[63] The restitution was imposed under the MVRA and the law is clear that collection of the debt can be enforced under the FDCPA. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Ebony Williams White's Motion to Quash Writ of Garnishment[64] and Motion for Annulment of Judgment[65] are **DENIED.**

**NEW ORLEANS, LOUISIANA**, this 14th day of July, 2026.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[61] Rec. Doc. 49.

[62] Rec. Doc. 32.

[63] *See Phillips*, 303 F.3d at 551 ("Congress drafted the MVRA with the intent that it would allow prosecutors to utilize the FDCPA to collect restitution in favor of private victims.").

[64] Rec. Doc. 83.

[65] Rec. Doc. 84.